On November 29, 1944, at about 6:30 A.M., a collision occurred between the 1938 Buick sedan automobile owned and operated by plaintiff, and a 1940 Ford truck and cane trailer owned by Joe Marchand and driven by his son and employee, Ulysse Marchand. Plaintiff's car was traveling towards Baton Rouge on Highway No. 93, the main thoroughfare for traffic between Baton Rouge and New Roads, and defendant's truck and trailer was traveling towards New Roads, and the accident occurred at a point about two miles north of the intersection of Highway 93 and U.S. Highway No. 71, the latter highway being the highway running between Krotz Springs and Baton Rouge. At the point where the accident occurred the highway is straight and has a width of 18 feet of concrete slab with dirt and gravel shoulders of 6 feet on each side. The center of the highway is marked by a black line.
The plaintiff contends that the accident was caused solely by the negligence of the driver of the truck in suddenly crossing the black center line onto plaintiff's side of the highway and running into plaintiff's car, and that as a result of the collision plaintiff's automobile was damaged to the extent of $392.66, and he suffered other losses itemized in the petition as loss of wages, expense and physical and mental pain and anguish, shock and permanent injury, totaling $2,500 making his total damage the sum of $2,892.66, for which he sues the defendant as insurer of the owner of the truck and trailer.
After hearing the case, the trial judge, as set forth in a well written opinion, concluded that the plaintiff had failed to sustain the burden of proving his case, and accordingly dismissed the suit. Plaintiff thereupon perfected a devolutive appeal to this court.
In support of his case, plaintiff depends on his own testimony and that of George Reed, Willie Fox, T.P. Norris and George E. Johnson.
He testified that he and George Reed left Baton Rouge at about 10 o'clock on the night before the accident to go to New Roads; that he took George Reed to New Roads at the latter's request and as a friendly act, and that the only expenditure for the trip by Reed was for gas for the automobile. His testimony as to the purpose of the trip was very vague and unreasonable. He states that when they arrived in New Roads that George Reed left him to go to the "pictures," and that he remained in the car and slept until his return, which would be some time between 5 and 6 o'clock in the morning, since he states that when Reed returned they immediately *Page 395 
started for Baton Rouge, and the accident occurred at a distance of about 18 miles thereafter, at 6:30. Upon being asked, on cross-examination, if the "pictures" lasted until that time in the morning, he admitted that they did not and that George Reed went to see someone after the picture show. As a matter of fact, if he stayed in the car, he has no knowledge as to what George Reed did when he left him, unless Reed told him on his return.
With reference to the actual accident, he testified first that when he was approaching the truck, driving "hard" to his right, he saw that the truck had its wheel on his side of the line, and that he blew his horn two or three times, but he never moved over, and "I kept coming, and he kept coming. I went as hard to the right as I could. The next thing I knew he had hit my car." Later he states in his testimony, "We were almost together when I realized he was way over the line," and that he had no opportunity whatsover to get his car out of the way. He testifies further that he was driving his car at about 25 miles per hour, and he estimates that the cane truck was going 30 to 35 miles per hour.
The plaintiff testified that after the accident the truck came to rest "Right in the middle of the highway, the front wheel across the line, facing towards New Roads," and that the truck blocked the road being "crossways the highway." In other words, it seems, according to his testimony, that the truck had its wheels about the middle of the highway, and its front part on the left side of the highway going towards New Roads, and that the trailer blocked the right side of the highway.
It may be noted here that shortly after the accident a T. . P. Railway truck came by and pulled the truck and trailer to the right of the highway in order to unblock the highway. Plaintiff testifies that his car, with the front wheel torn off or shattered, came to rest on the left side going towards Baton Rouge on the highway, apparently in the ditch or on the shoulder.
Plaintiff testified further that at the time of the accident and some time prior thereto his friend George Reed was sleeping and that the only two eyewitnesses to the actual accident were himself and the truck driver. He testified further that his car was in good order, that his lights were burning and that his windshield wiper was working, although he was contradicted by some of the other witnesses who stated that he admitted his windshield wiper was not working.
Plaintiff admits that he and one George E. Johnson went over to see Mr. Marchand some 7 or 8 days after the accident, stating: "We went mostly to see would he be willing to have my car fixed, since we thought he was in the wrong." It is contended by defendant that this call on Mr. Marchand by plaintiff and his friend, George E. Johnson, was for the purpose of making arrangements with Mr. Marchand to prevent him from filing criminal charges against plaintiff, but this is vigorously denied by plaintiff and by Johnson.
Plaintiff testified further that neither he nor his companion, George Reed, had had anything to drink during the night and morning prior to the accident.
George Reed testified that he asked plaintiff to take him to New Roads where he wanted to see some undisclosed individual on business, and that he left plaintiff in his car, and after attending to his business, returned and found him asleep; that he then woke him up, and plaintiff asked him if he was ready to return, and upon his giving an affirmative answer, plaintiff started the return trip; that shortly thereafter he fell asleep and did not wake up until after the collision; that neither he nor plaintiff had anything to drink.
It may be noted that there is no testimony with reference to the overnight trip to New Roads of plaintiff and his companion George Reed other than their own, and that, as found by the trial judge, it appears rather unusual, if not unreasonable, that plaintiff would have taken his friend to New Roads, leaving Baton Rouge at 10 o'clock at night for the purpose of his friend seeing a picture show and attending to business, as testified by plaintiff, or of attending to business as testified by Reed, and that from the time that Reed was fulfilling his purpose, whatever it was, that plaintiff remained in his automobile *Page 396 
and slept. There is a possibility that such was the case, but in view of the lack of any corroborating testimony, as observed by counsel for defendant, it is difficult to believe.
Willie Fox and T.P. Norris, the other two witnesses for plaintiff, testified that they arrived at the scene of the accident shortly thereafter, and that at that time they found that the truck had the highway completely blocked, lying completely across the highway, and that the Thomas car was lying on the left side going towards Baton Rouge, of the highway, on the shoulder, some 30 feet away from the truck. They both testified that neither plaintiff Thomas nor his companion Reed appeared to be drunk, or appeared to have had anything to drink. Their testimony is similar, except that one witness testified that they remained in their car while talking to Thomas and Reed, while the other states that they got out of their car.
Ulysse Marchand, the truck driver, testified that he was driving down the road towards New Roads, around 6:30 in the morning; that it was drizzling rain; that he first passed one car driven in the other direction, and then noticed plaintiff's car at a distance of about 150 feet, and that plaintiff's car "when I got even with him, it looked like he just curved in on me and hit me on the left side front." He testifies that at the time of the collision his lights were burning properly on the dimmers, and that his windshield wiper was working properly, and that he was driving at a speed of 30 miles an hour. He testified further that all plaintiff said after the accident was that "his car was all tore up"; that plaintiff did not make any statement as to whether he or plaintiff was at fault. Being asked the question "Was there any evidence of liquor drinking?" he stated that he smelt liquor on the driver of the automobile. His testimony may be summarized to the effect that he was driving 30 miles an hour, about 1 1/2 foot to the right of the black line, with his lights burning properly, and his windshield wiper working properly, and that the plaintiff suddenly swerved into his truck on his left side, hitting it on the left front fender, and then continuing on the side of the truck, striking the rear wheel thereof, and then striking the cane trailer, causing the truck and trailer to swerve to their left, resulting in the truck and trailer coming to rest crossways on the highway, and the automobile to continue towards Baton Rouge, coming to rest on the left shoulder of the highway. He testified further that he noticed the windshield of plaintiff's car after the accident, and that it was kind of dirty.
He testified that some 2 1/2 or 3 hours after the accident, two police officers arrived at the scene, and that at that time they said they could not make an arrest of the driver of the automobile because by then he had sobered up.
Joseph Marchand, the owner of the truck, testified that after a few days following the accident, William Thomas, the plaintiff, and George E. Johnson, whom he supposed was the uncle of Thomas, came to see him with reference to settling the case, and that in effect they admitted that Thomas was responsible for the collision; that he had no financial means to pay the damage to the truck, unless it could be arranged whereby Thomas would pay gradually; that they did not desire to have a charge for drunken driving filed against Thomas; that Johnson, upon examining the truck, conceded that Thomas was in the wrong. It may again be noted that this is vigorously denied by both Thomas and Johnson.
Albert Sikes, traffic policeman, testified that he arrived at the scene of the accident at about 7:30 A.M., for the purpose of directing traffic, and that he did not talk to the plaintiff, nor could he give any information throwing any light on the accident. Boucher and Seguin testified that they are State Policemen, and that some three hours after the accident they investigated the accident, and that at that time they could not testify that the driver had been drinking. Boucher testified, in answer to the questions "what damages, if any, did you see to the cane truck?" "The Buick struck the cane truck along about the front of the trailer, hung about the middle of the load carrying axle and trailer axle and jerked them both out and jerked them right around. It hooked the truck on the *Page 397 
side, it looked like." Policeman Seguin testified that plaintiff's companion, Reed, was intoxicated at the time of their investigation, but neither he nor Boucher would testify that the driver, the plaintiff herein, was under the influence of intoxicating liquor at the time of their investigation.
George E. Johnson testified with reference to accompanying plaintiff to see Mr. Marchand, the owner of the truck, stating that plaintiff was hard of hearing, and for friendly reasons he went with him to see if a settlement could not be made. As stated before, he denies vigorously that any admission of wrong on the part of plaintiff was ever made, and that the purpose of the call on Mr. Marchand was to secure the settlement for the damages to plaintiff.
It is clear from the above discussion of the testimony that it is highly contradictory, and that plaintiff's case depends almost entirely on his own testimony, which is rather weak because of the circumstance that this unusual trip remains unexplained, and because of the fact that on the vital point as to whether the accident occurred in his traffic lane or in the traffic lane of the truck, plaintiff contradicts himself; he first states that he noticed the truck approaching him on the wrong side some 150 feet away, and later states that he did not perceive that the truck was in his lane of traffic until immediately before the impact.
Nevertheless, counsel for plaintiff seriously contends that the physical facts as shown by the testimony, including photographs of the automobile and truck introduced in evidence show that they support the testimony of plaintiff that the truck ran into him by suddenly swerving to its left. In their brief they state "We submit that it is common knowledge and in line with all principles of physics that if the left wheel of a moving automobile be suddenly destroyed that such vehicle will swerve to the left. It is the same principle that is used in operating Army tanks or any track type tractor. If you desire to turn to the left you lock the left track."
On the other hand, counsel for defendant contend that "If the Marchand truck, being a cane truck, had been driven across the highway and struck the right front fender of plaintiff's car, it would have driven the car off the highway to its right. We submit that the physical facts prove conclusively that plaintiff's automobile was driven sharply to its left, across the center line, struck the front wheel or fender of the Marchand truck, causing it to swerve to its right and on to the shoulder of the highway. The car continuing on its course to the left, struck the rear wheel of the truck with such force as to tear them loose, then struck the trailer, knocking it to the left, and continued its course across the highway and into the ditch."
In the light of the testimony and the physical facts, we do not see how we can find manifest error in the finding of the trial judge that plaintiff has failed to sustain the burden of proof by establishing his claim to a legal certainty.
Judgment affirmed at the costs of plaintiff, appellant.